UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLLEEN MACORT and
ACCESS NOW, INC.,

Plaintiffs,

v.                                        CASE No. 8:03-CV-1333-T-23TGW

McDONALD'S CORP.,

Defendant.

_____

O R D E R

After the parties entered into a stipulated settlement, the plaintiffs

sought an award of attorneys' fees and related costs (Doc. 24).  The plaintiffs'

motion was thereafter referred to me for disposition (Doc. 25).  The defendant

does not dispute that the plaintiffs are the prevailing party and are entitled to

an award of attorneys' fees and costs, but do dispute the plaintiffs' requested

amount (Doc. 29).  Having considered the materials submitted and the

governing legal standards, the plaintiffs shall be awarded $12,152 in

attorneys' fees and $5,209.83 in costs and expenses.

I.

The plaintiffs in this case are Colleen Macort and Access Now, Inc.  Macort has a qualified disability under the Americans with Disabilities Act of 1990 ("ADA") and is a member of Access Now (Doc. 1, p. 2, ¶3). Access Now is a not-for-profit organization that seeks to have commercial and public places comply with the ADA's requirements that are designed to provide disabled persons with equal access to these places (id. at p. 2, ¶4).

Macort visited McDonald's restaurants located at 699 East 10th Street in Palmetto, Florida, and at 3531 West Cortez Road in Bradenton, Florida (id. at p. 2, ¶3).  She alleges she was denied equal access to these restaurants due to certain architectural impediments relating to parking, bathrooms, seating and other similar barriers (id. at pp. 5-6, ¶¶ 13, 14). Consequently, on June 25, 2003, the plaintiffs filed suit against McDonald's Corporation for these violations pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. 12101 et. seq., and Florida Statutes 509.092 and 760.11(5) (Doc. 1).  The plaintiffs sought injunctive and declaratory relief, compensatory and punitive damages, attorneys' fees, costs, and the expenses of the suit.

Subsequently, the parties settled the case and executed a Stipulation for Settlement (see Doc. 14; Doc. 24, unexecuted settlement, Ex. A).  After the parties filed a Joint Notice of Dismissal with Prejudice on November 12, 2004 (Doc. 19), an Order was entered dismissing the case with prejudice, but providing for the filing of a motion for attorneys' fees (Doc. 20).

Under the stipulated settlement, the defendant agreed to fix the restaurants' architectural barriers to bring them into compliance with the ADA's accessibility requirements (Doc. 24, unexecuted settlement, Ex. A). The agreement also provided (id. at p. 10):

> The Defendant shall pay the Plaintiffs' reasonably incurred attorney's fees, expert fees and litigation expenses.  Within five days of the execution of this Agreement, the Plaintiffs' counsel shall provide a detailed statement of such attorney's fees and costs, including expert fees to the Defendant.  Within ten days of receipt thereof, the parties agree to negotiate in good faith regarding an amicable resolution of this issue.  Should the parties be unable to reach an amicable resolution thereof, the parties agree to submit the issue to the Court to make a determination as to a reasonable amount of attorney's fees, expert fees and litigation expenses to be paid to Plaintiffs' counsel by Defendant.

The parties were unable to reach an agreement relating to the amount of the attorneys' fees, related costs, and expenses. The plaintiffs then filed a motion for attorneys' fees, costs and expenses based upon the parties' stipulated settlement (Doc. 24). Thereafter, the motion was referred to me for disposition (Doc. 25). The defendant filed a response to the motion (Doc. 29). Further, an Order was entered directing the defendant, to the extent it had not already done so, to file specific objections to the plaintiffs' requested fees and costs and directing the plaintiffs thereafter to file specific responses to those objections (Doc. 30). Only the plaintiffs have filed a supplemental memorandum (Doc. 34).

## II.

The plaintiffs seek attorneys' fees of $18,187.50 and costs and expenses totaling $5,209.83 (Doc. 24, p. 14). The claim for attorneys' fees seeks compensation for the services of two lawyers from the law firm of Schwartz Zweben & Associates, L.L.P., (id. at pp. 2, 6, 9-10; Ex. B; Doc. 34, pp. 3-6, Ex. A). Gregory E. Schwartz is a managing partner for the firm and participated in all aspects of the litigation (Doc. 24, p. 6; see Ex. B). Bartosz Ostrzenski, a former junior associate, also worked on all phases of this case,

including the preparation of the case management report, attending the restaurants' inspections, drafting interrogatories, and conferring with opposing counsel (see id.).

The defendant acknowledges that the plaintiffs are the prevailing parties and are entitled to an award of reasonable attorneys' fees and expenses. Consequently, what remains to be determined is the amount of the attorneys' fees and expenses.

Under 42 U.S.C. 12205, a court in its discretion, may award a prevailing party a reasonable attorney's fee, litigation expenses and costs. "[A] reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984). In this calculation, the court should exclude hours that were not reasonably expended. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). This "lodestar" may then be adjusted upward or downward based on other considerations. Id.; Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v.

Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).   With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates.   Id. at 1299.   In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services.   Id. at 1303.   With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly."   Hensley v. Eckerhart, supra, 461 U.S. at 433.

A.   Hourly Rates

A beginning step in the computation of the lodestar is the determination of the reasonable hourly rate.   The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate.   Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).   The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which

it can determine the reasonableness of the proposed rate.   <u>Norman</u> v. <u>Housing Authority of City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1303.

The plaintiffs seek compensation for the services of two lawyers, Gregory E. Schwartz, a managing partner, and Bartosz Ostrzenski, a former junior associate[1] (Doc. 24, pp. 2, 6, 9-10; Ex. B; Doc. 34, pp. 3-6, Ex. A). The defendant argues that each attorney's rate should be lowered (Doc. 29, McGuinness aff.,  pp. 4-7, ¶¶ 12-21).

The defendant correctly asserts that the plaintiffs failed to provide sufficient evidence concerning attorney Schwartz's background, skill, reputation or experience in litigating ADA cases and has failed in the same respect with regard to attorney Ostrzenski's experience (<u>id</u>. at p. 5, ¶¶ 13-15; p. 6, ¶18).  The defendant proposes that Schwartz's hourly rate be reduced to $250 from $280 and that Ostrzenski's hourly rate be reduced to $140 from $225 (<u>id</u>. at p. 6, ¶17; p. 7, ¶20).

Plaintiffs' counsel submitted an expert affidavit by David J. Chesnut to support the claim for attorneys' fees (Doc. 24, Chesnut Aff., Ex. C).  An expert's opinion is useful in the determination of an attorney's rate.

---

[1]It appears that Ostrzenski has been replaced in the firm by attorney Bradley Johnson (Doc. 34, p. 3).

See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1299.  In this case, however, the defendant correctly asserts that Chesnut's affidavit is not helpful because it does not set forth any justification for counsel's claimed rates (Doc. 29, McGuinness aff., p. 5, ¶15; p. 7, ¶19).

Consequently, if this were a matter of first impression, I would be inclined to set Schwartz's rate at $250 per hour, as opined by the defendant's expert Neil McGuiness.  However, Schwartz's hourly rate has already been considered and set at $280 per hour in other cases in the Middle District of Florida.  See Lucibello and Access Now, Inc. v. Land & Sea Family Restaurant, Inc., 2:04-CV-73-FtM-29DNF (M.D. Fla. Nov. 16, 2004) (awarding $280 per hour at Doc. 30); Access Now, Inc. and Lamb v. Vision Realty Corp., 2:01-CV-376-FtM-29DNF (M.D. Fla. Oct. 18, 2004) (same at Docs. 67, 68); Lamb and Access Now, Inc. v. Walter P. Pierrot, 2:04-CV-115-FtM-29DNF (M.D. Fla. Oct. 18, 2004) (same at Doc. 23).  The defendant has provided no argument demonstrating that these determinations were erroneous or distinguishable.  Therefore, in accord with those decisions, I will also set Schwartz's rate at $280 per hour.

Ostrzenski's requested hourly rate is $225.  As indicated, this challenged rate is not adequately supported by Chesnut's affidavit.  Chesnut provides no information concerning Ostrzenski's background or experience (see Doc. 24, Chesnut aff., Ex. C).  Moreover, in this district, around the time of his admittance to the Florida Bar, he was awarded a rate of $120 per hour. Access Now, Inc. and Lamb v. Vision Realty Corp., supra, 2:01-CV-376-FtM-29DNF (Docs. 67, 68).  The only probative evidence, therefore, regarding Ostrzenski's rate is that contained in the affidavit of McGuiness, who opines that Ostrzenski's rate should be set at $140 per hour.  I accept that opinion and find that $140 per hour is a reasonable rate for Ostrzenski.

B.  Reasonableness of the Number of Hours Expended

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation.  In calculating this, the court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims.  Duckworth v. Whisenant, supra, 97 F.3d at 1397.  In this case, the plaintiffs seek compensation for 68 hours of work, which involves, among other things, drafting the complaint and case management report, handling discovery, conducting client and

expert conferences, negotiating a settlement, and preparing the attorneys' fee motion (see Doc. 24, Ex. B).

As indicated, "[t]he fee applicant bears the burden of ... documenting the appropriate hours...."  Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303.  Thus, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  Id.  Here, the plaintiffs were given an additional opportunity to supplement their time records with greater detail to satisfy this obligation (Doc. 30).

Similarly, "'[o]bjections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"  ACLU of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (quoting Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301).  Thus, generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight.  Norman v. Housing Authority of City of Montgomery, supra,

836 F.2d at 1301.  Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal.  See Gray v. Lockheed Aeronautical Systems Co., 125 F.3d 1387 (11th Cir. 1997).  The defendant by court order was advised that its objections to time records must be specific and accompanied by an explanation supporting the challenge (Doc. 30).  Consequently, unless clearly non-compensable, all hours as to which the defendant has not made a sufficient objection will be accepted.

The plaintiffs have set forth their claim for attorneys' fees in their fee application (Doc. 24).  The defendant has filed its response along with its expert's affidavit (Doc. 29; see also Doc. 28, McGuinness aff.).   The defendant's expert, McGuinness, noted his objections on a chart which lists counsel's tasks and sets forth his comments along with suggested reductions in time (Doc. 29, Ex. C).  Accompanying the chart is McGuinness' affidavit generally explaining the objections (Doc. 29, McGuinness aff.).  The plaintiffs have filed a reply and have added their responses to the defendant's objections by utilizing the defendant's chart (Doc. 34, Ex. A).

The defendant's objections and the plaintiffs' responses have been reviewed.  As defendant's expert points out, plaintiffs' lawyers have been involved in many cases with these plaintiffs, including 58 cases in this district (Doc. 29, McGuinness aff., p. 4, ¶11).  As noted by the defendant, "the [ADA] which was designed to assure access for the disabled was not also designed to assure excess for lawyers."  Brother v. Miami Hotel Investments, Ltd., 341 F.Supp.2d 1230, 1236 (S.D. Fla. 2004).  In this respect, this case was overworked in that many issues should have been routine for plaintiffs' counsel, including the preparation of this case's complaint.  Moreover, no substantive motions or memoranda were filed until this attorneys' fee motion. In addition, some tasks that Schwartz performed should have been done more efficiently, since he has "litigated in excess of 250 ADA cases" (Doc. 24, p. 8).  Moreover, the higher rate at which Schwartz is being compensated contemplates that he would have performed more efficiently.  See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1300-01. Therefore, this is not a case in which plaintiffs' counsel were faced with novel or difficult issues.  In short, the plaintiffs' claims of time expended are subject to challenge.

On the other hand, many of the defendant's objections are problematic. Thus, they tend to be conclusory. Furthermore, the defendant frequently did not set forth the precise ground for an objection, but characterized the time in terms such as "[e]xcessive & [u]nnecessary," "[u]nnecessary, [e]xcessive & [a]dministrative," "[e]xcessive, [d]uplicative & [u]nnecessary," or "[v]ague, [e]xcessive & [u]nnecessary," (Doc. 29, Ex. C). In addition, the defendant stated proposed reductions in time, but gave no explanation for the amount of the reduction.

In sum, it is my view that the amount of hours is plainly overstated. However, the amount of the overstatement is not clear. The materials submitted, nevertheless, permit the following assessment.

1. The defendant seeks to exclude time spent on matters it believes are administrative and should not have been handled by the attorneys (Doc. 29, Ex. C). In general, that objection is lacking in specificity. Often, the objection is followed by the comment that "[s]cheduling should be done by administrative staff" or that it was "an administrative matter" (Doc. 29, Ex. C, see, e.g., GES, p. 2, 7/22/03; p. 3, 12/12/03; BO, p. 6, 10/03/03, 10/06/03, 10/10/03). Thus, the defendant provides no specific basis for concluding that

certain matters should only be handled or scheduled by the administrative staff.  Therefore, these objections are overruled.

2.  The defendant complains about the amount of time spent by the lawyers on communicating with the plaintiffs.  In particular, a reduction should be made for Schwartz's entry on 12/19/03, relating to his review of correspondence from the mediator and drafting a letter to the client.  The plaintiffs respond that "the letter was about the mediator and the mediation process" (Doc. 34, Ex. A, GES, p. 4, 12/19/03).  Schwartz had previously drafted a letter to Macort on December 12, 2003, explaining the mediation (id. at p. 4, 12/12/03).  The plaintiffs have not explained the necessity to write an additional letter on the same subject matter.  Furthermore, I wonder, in light of the fact that Macort had 58 cases pending in this district, how many times the mediation process was explained to her.  Therefore, it is appropriate to make a .2 of an hour reduction.

Moreover, this time entry is representative of apparent padding of time through communications with the plaintiffs.  Of the total of 68 hours expended on this case, over 11 were spent exclusively, or predominately, communicating with the plaintiffs.  Further, with respect to more than another

15 hours, some of the claimed time was spent on communicating with the plaintiffs. This seems patently excessive.

It is recognized that an attorney is obligated to keep a client reasonably informed about the status of the matter. See, e.g., Rule 4-1.4, Florida Rules of Professional Conduct. Consequently, I normally compensate an attorney for time spent on that type of activity.

This case, however, is different. The plaintiffs are engaged in volume litigation, and would seemingly have a different perspective than a party with just one case. Under the circumstances, it is doubtful that the plaintiffs had a bona fide interest in being kept apprised of each detail in every one of their cases. Thus, there is no indication, for example, that Macort intended to frequent the two McDonald's restaurants that were the subject of this lawsuit and wanted to be advised of their status so she could go eat there.

Of course, counsel were entitled to communicate with the plaintiffs as much as they wanted. But the defendant should have to pay for those communications only to the extent they were reasonable. Here, the time spent on the client communications was unreasonable. Accordingly, I will reduce Schwartz's time by an additional 7 hours.

3.  The defendant asserts that counsel's work on certain matters was duplicative and, therefore, should be disallowed or reduced to an appropriate number of hours.  In this regard, the defendant seeks to reduce hours for plaintiffs' counsel's work on drafting the complaint (Doc. 29, Ex. C, GEC, p. 2, 6/7/03, 6/11/03, 6/18/03).  The defendant's argument that drafting the complaint should not have taken as long to complete is well-taken, considering the complaint in this case is nearly identical to the one filed in Macort and Access Now, Inc. v. Boston Market Corp., 8:03-cv-1329-T-27TGW.  The two complaints are virtually the same with the exception of the defendants' names, addresses and ADA violations (compare Doc. 1 in 8:03-cv-1329-T-27TGW and Doc. 1 in 8:03-CV-1333-T-23TGW).  In this case, although the plaintiffs describe the defendant's ADA violations in their complaint, only two paragraphs in the complaint relate to the restaurants' architectural barriers (Doc. 1, pp. 5-6, ¶¶ 13-14).  Consequently, it should not have taken plaintiffs' counsel over three hours to draft what appears to be a boiler plate complaint (see Doc. 24, Ex. B, GES, p. 1, 6/6/2003, 6/7/2003, 6/11/2003, 6/18/2003).  A total of 1.85 hours will therefore be eliminated.

The defendant seeks to exclude time spent by plaintiffs' counsel preparing the Stipulation for Settlement (Doc. 29, Ex. C, GES, p. 3, 2/2/04; p. 4, 2/3/04, 2/4/04, 2/25/04).  It appears that an excessive amount of time was utilized in drafting the Stipulation for Settlement.  Schwartz spent over 11 hours drafting the stipulation (see Doc. 24, Ex. B, GES, p. 5, 2/2/04, 2/3/04, 2/4/04, 2/19/04; p. 6, 2/25/04, 2/26/04, 3/2/04).  If counsel has the expertise in ADA cases for which he is being compensated at a higher rate, it should not have taken him over 11 hours to draft a 12-page document, especially with the aid of an expert.  Accordingly, it is appropriate to deduct 3.8 hours for this matter.  In this respect, courts awarding attorneys' fees generally recognize that higher rates, which reflect legal experience, correlate with efficient performance.  See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1300-01.  Thus, an attorney charging a higher rate is expected to take less time on tasks than an inexperienced lawyer.

A reduction of .3 of an hour is made for Ostrzenski's time entry on July 7, 2003, relating to the preparation of the notice of pendency.  It should not have taken counsel .4 of an hour to prepare the three-sentence notice (see Doc. 3).

An additional reduction should be made with respect to Schwartz's time entry on February 13, 2004.  The plaintiffs' explanation is sufficient to that extent that correspondence was required with opposing counsel in order to resolve a motion to compel (Doc. 34, Ex. A, GES, p. 7, 2/13/04).  However, counsel has not explained why it was necessary to draft three letters over three consecutive days (Doc. 24, Ex. B, GES, p. 5, 2/11/04, 2/12/04, 2/13/04).  Therefore, counsel's time entry on February 13, 2004, should be reduced in half to .25 of an hour.

4.  The defendant seeks to reduce time on the basis that the time spent was "excessive."  However, objections to entries as to which the defendant has not provided an explanation have been discounted (Doc. 29, Ex. C, GES, p. 3, 8/15/03, 1/8/04; p. 4, 2/26/04).  The defendant was forewarned that objections needed to be accompanied by cogent explanations (Doc. 30).  Thus, the hours set forth in Schwartz's entries on August 15, 2003, January 8, 2004, and February 26, 2004, have been accepted.

The defendant argues that plaintiffs' counsel took too much time to complete certain tasks.  With respect to Schwartz's entries on September 10, 2003, and December 29, 2003, the plaintiffs' responses are accepted.

Schwartz only spent one-half hour speaking with the expert and drafting a letter to the expert regarding the restaurants' barriers (Doc. 34, Ex. A, GES, p. 3, 9/10/03).  Further, Schwartz worked a little over an hour reviewing the expert's report and drafting a letter to the client (id. at p. 5, 12/29/03).  The defendant's objection that the "[r]eports should not have taken that long to review" (id.) is too conclusory to be sustained.  In any event, this amount of time appears reasonable for counsel to review the expert's report.

In a related matter, the defendant's objections to Ostrzenski's time on July 29, 2003, and November 24, 2003, are also overruled as the plaintiffs have adequately explained the necessity for the amount of time billed (Doc. 34, Ex. A, BO, p. 1, 7/29/03; p. 3, 11/24/03).

However, Schwartz's time should be reduced by the defendant's suggested .6 of an hour for the time Schwartz spent drafting two motions (Doc. 29, Ex. C, GES, p. 5, 9/9/04, 11/24/04).  First, it should not have taken Schwartz as long as it did to draft the motion to extend since that motion only consists of an introduction paragraph followed by four sentences (Doc. 15). The same is true for the motion to extend time for filing the attorneys' fee motion.  That motion consists of an introduction paragraph followed by four

short paragraphs (Doc. 22).  It should not have taken Schwartz over an hour to complete these tasks.  Accordingly, a .6 reduction is made.

5.  The defendant asserts that time should be reduced for "unnecessary" work.  The defendant objects to Schwartz's time spent traveling to meet the client and to confirm the barriers at the restaurants (Doc. 29, Ex. C, GES, p. 1, 5/26/03).  The defendant does not cite any legal authority indicating that an attorney is not permitted to bill for travel (see id.), and the rule is clearly otherwise.  The plaintiffs have adequately replied that this time was required in order for counsel to confirm the architectural barriers in order to satisfy the requirements of Rule 11, Fed.R.Civ.P. (Doc. 34, Ex. A, GES, p. 1, 5/26/03).  Therefore, the defendant's objection to this time entry is rejected.

The defendant also objects to Schwartz's time billed for work performed on discovery issues (Doc. 29, Ex. C, GES, p. 4, 2/5/04, 2/9/04, 2/11/04).  The plaintiffs' explanation that time was required on February 5, 2004, to review the defendant's discovery responses because the case was not settled until the eve of the pretrial conference is accepted (Doc. 34, Ex. A, GES, p. 6, 2/5/04).  However, the defendant's point is persuasive that it should

not have taken Schwartz over three hours to research discovery issues. Indeed, an attorney that has "filed and litigated in excess of 250 cases" (Doc. 24, p. 8) should be well versed concerning issues that may arise during discovery and be more efficient in his review of those issues. The plaintiffs have not explained how the defendant's discovery responses were "unique" requiring the large expenditure of time devoted to discovery. Therefore, Schwartz's time on February 9, 2004, will be reduced in half, equaling a .7 reduction, and the time on February 11, 2004, will be reduced by 1.6 hours.

The defendant objects to Schwartz's entry on July 1, 2004, for his work reviewing multiple court orders and drafting a letter to the client (Doc. 29, Ex. C, GES, p. 4, 7/1/04). Upon review of the case docket, it does not appear, as the plaintiffs have suggested, that the correct date of the entry is July 1, 2003, and that initial orders were issued by the Court prior to that date. The clerk's office only issued a notice of designation that the case was a track two case (Doc. 2). No other notices were issued by the clerk's office prior to that date. The notice of designation only included a form for the case management report and forms for the parties to consent to my jurisdiction to handle the case (id.). Therefore, it is unclear what documents plaintiffs'

counsel were reviewing for .4 of an hour.  Accordingly, counsel's time on this date will be disregarded and a .4 reduction is made.

The defendant seeks to reduce Ostrzenski's hours for work performed relating to the restaurants' inspections.  The defendant's objection that an expert, rather than the attorney, should prepare for an inspection is unpersuasive (Doc. 29, Ex. C, BO, p. 6, 11/7/03).  The plaintiffs are correct in their reply that pleadings that are filed with the court need to be accurate (Doc. 34, Ex. A, BO, p. 2, 11/7/03).  It is reasonable to have an attorney prepare for the inspections to become familiar with the restaurants' architectural issues in order to be capable of accurately addressing legal matters that may arise in the case.  Therefore, this objection is denied.

The defendant also objects to Ostrzenski's attendance at the inspection of the restaurants (Doc. 29, Ex C, BO, p. 6, 11/10/03).  As just explained, however, it is important for an attorney be well informed concerning the case.  Thus, it was reasonable for Ostrzenski to attend the inspections performed by the expert at the restaurants.  Accordingly, the objection is denied.

However, a .6 of an hour reduction will be made for Ostrzenski's entry on November 11, 2003 (id. at p. 6, 11/11/03).  The defendant argues that a report of the inspections to the client should come from the expert rather than the attorney (id.).  While it is reasonable for an attorney to keep a client reasonably informed, the plaintiffs' answer to the defendant's objection is unresponsive (Doc. 34, Ex. A, BO, p. 3, 11/11/03).  The plaintiffs replied (id.):

> [b]oth attorneys communicated with the client. Each case is unique and the pleadings need to be accurate as it is being filed with the court.  It is appropriate to call the client and confirm.

This response does not answer the objection that an expert should send a report instead of the attorney.  Thus, it is unexplained why Ostrzenski spent almost an hour to draft the letter when he spoke with the client on the previous day (id. at p. 3, 11/10/03).  Accordingly, a .6 reduction is made.

In sum, it appears to me that the time reasonably expended on this case by Schwartz was 36.1 hours.  The time reasonably expended by Ostrzenski was 14.6 hours.  Therefore, the lodestar calculation is as follows:

| Counsel | Rate | Time Allowed | Fee Awarded |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Schwartz | $280 per hour | 36.1 | $10,108 |
| Ostrzenski | $140 per hour | 14.6 | $ 2,044 |

Neither side asserts any adjustment to the lodestar amount. Therefore, the total attorneys' fee award is $12,152.

## III.

The plaintiffs also seek to recover $1,009.83 in costs and litigation expenses pursuant to the parties' Stipulation for Settlement[2] (Doc. 24, pp. 2-3, 11-12, 14; Doc. 34, pp. 6-8, 11).  The defendant responds that the plaintiffs are not entitled to all of its costs, objecting that certain items are general overhead expenses and are not recoverable (Doc. 29, McGuinness aff., p. 10, ¶31).

The defendant was advised that any objections to the plaintiffs' costs had to be specific and accompanied by a cogent explanation (Doc. 30). The defendant's three-sentence general commentary is clearly insufficient to meet this standard (see Doc. 29, McGuinness aff., pp. 10-11, ¶31).  Moreover,

---

[2]The plaintiffs request $1,359.83 in litigation expenses and costs (Doc. 24, p. 14; Doc. 34, p. 11).  It appears that the plaintiffs have included the expert fee from David J. Chesnut in that figure.  Chesnut's expert fee is appropriately considered in the following section relating to expert fees.  Accordingly, discounting his fee from the cost figure yields an amount of $1,009.83.

the defendant is incorrect that costs relating to postage, travel expenses and photocopies are considered general overhead expenses and are not recoverable (id.).  To the contrary, in Dowdell v. City of Apopka, Florida, the court explained that "[t]ravel, telephone, and postage expenses are not unusual" and that reimbursement of these types of expenses in civil rights litigation is subject to the reasonableness standard.  698 F.2d 1181, 1192 (11th Cir. 1983); see also American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1328 (M.D. Fla. 2003).

Importantly, pursuant to the Stipulation for Settlement, the defendant agreed to pay the "[p]laintiffs' reasonably incurred ... litigation expenses" (Doc. 24, unexecuted settlement, Ex. A, p. 10).  Moreover, 42 U.S.C. 12205 provides that "the court ... in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs ..." Notably, these provisions permit recovery of litigation expenses that would not be recoverable under the basic cost statute of 28 U.S.C. 1920.

An amount of $1,009.83 in litigation costs and expenses does not appear to me to be excessive for the amount of work conducted in this case.[3] Accordingly, the plaintiffs will be awarded all of its costs and non-expert litigation expenses.

IV.

In addition, the plaintiffs seek to recover $4,200 in expert fees (Doc. 24, pp. 12-14; Doc. 34, pp. 8-11).  The defendant does not assert an objection to the amount charged by the plaintiffs' attorney's fee expert, David J. Chesnut (see Doc. 29, McGuinness aff., pp. 10-11, ¶¶ 31-32).  Therefore, the plaintiffs will be awarded $350 for that expert fee.

The defendant asserts a conclusory objection to the amount charged by the plaintiffs' ADA experts, claiming the fee should be reduced in half (id. at p. 11, ¶32).  Pursuant to the parties' Stipulation for Settlement, the defendant agreed to pay the "reasonably incurred ... expert fees" (Doc. 24, unexecuted settlement, Ex. A, p. 10); see also, Lovell v. Chandler, 303 F.3d

---

[3]It should be noted that the plaintiffs have not included specification for all of their costs and $379.62 of expenses is missing from the submission (see Doc. 24, Ex. B, pp. 8-10).  If the defendant had asserted an objection on this ground, the objection would likely have been sustained unless it were remedied.  However, the defendant  has not challenged the computation of the amount of the expenses (see Doc. 29, McGuinness aff., p. 10, ¶31).  Therefore, no deduction is made on this basis.

1039, 1058-59 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003) (awarding expert witness fees).   The defendant does not explain why, despite this agreement, a 50 percent reduction of the experts' fee is warranted (Doc. 29, McGuinness aff., p. 11, ¶32).   Moreover, based on the experts' resumes (see Doc. 24, Ex. D) an hourly rate of $200 does not seem unreasonable for their services in this case, and the defendant has not shown that it is.   Accordingly, the plaintiffs will be reimbursed for the ADA experts' fee in an amount of $3,850.

It is, therefore, upon consideration

ORDERED:

That the Plaintiffs' Motion for Attorneys' and Expert's Fees, Litigation Expenses and Costs and Incorporated Memorandum of Law (Doc. 24) is hereby GRANTED to the extent that the plaintiffs are AWARDED attorneys' fees in the amount of $12,152 and costs and expenses in the amount of $5,209.83.

DONE and ORDERED at Tampa, Florida, this 11th day of August, 2005.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE